**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Joseph MULLER, Sr.,
Defendant-Appellant.**

No. 75–4045.

United States Court of Appeals,
Fifth Circuit.

April 22, 1977.

Rehearing Denied June 2, 1977.

**1376**

Tony Martinez, Brownsville, Tex. (Court-appointed), for defendant-appellant.

Edward B. McDonough, Jr., U.S. Atty., James R. Gough, George A. Kelt, Jr., Asst. U.S. Attys., Houston, Tex., John P. Smith, Asst. U.S. Atty., Brownsville, Tex., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and INGRAHAM, Circuit Judges.

AINSWORTH, Circuit Judge:

Robert Muller, David Tuley and Frank Oller were indicted on thirteen counts relat-

ing to possession of marijuana, amphetamine tablets and firearms.[1] A hearing was held on motions of the three defendants to suppress the evidence, which motions were denied. Muller's trial was severed and he was subsequently found guilty by a jury on two counts of the indictment, conspiracy and possession with intent to distribute 546 pounds of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 845.[2]

Muller contends on appeal that the trial court erred in (1) overruling his motion to suppress; (2) allowing statements made by codefendants Tuley and Oller after their arrest to be admitted into evidence; and (3) denying his motion for acquittal because the evidence was insufficient to sustain a conviction. We find no error and affirm.

*The Motion to Suppress.*

Government evidence showed that Special Agents Gabriel Bustamonte and Carlos Torres of the Cameron County Organized Crime Task Force, Texas, had received information from a previously reliable confidential informant that two men from Oklahoma were planning to transport a large quantity of marijuana to Oklahoma in two vehicles—a pickup truck with camper and a motor home—and that the suspects were staying in Rooms 113 and 133 of the Ramada Inn at Brownsville, Texas. Federal Drug Enforcement Administration [DEA] Agents Roy Lofstrom and Gary Morrison were alerted who subsequently received information from another DEA office that Robert Muller, who rented Apartments 1

1. This is a companion case to *United States v. Tuley,* 5 Cir. 1977, 546 F.2d 1264, in which we upheld the convictions of Tuley and Oller, co-indictees of appellant.

2. The indictment charged:

   COUNT 1: That from on or about January 13, 1975, to on or about January 17, 1975, within the Brownsville Division of the Southern District of Texas, DAVID TERANCE TULEY, ROBERT JOSEPH MULLER, SR., and FRANK CHRISTIAN OLLER knowingly and intentionally did combine, conspire, confederate, and agree together and with each other and with other persons unknown to the Grand Jurors to unlawfully possess, with intent to distribute, a quantity of marihuana, a controlled substance under Schedule I of the Controlled Substances Act of 1970, in violation of Sections 846 and 848(a)(1), Title 21, United States Code.

   Pursuant to and for the purpose of carrying out said unlawful combination, confederation, conspiracy, and agreement and to effectuate the objects thereof, the following and other overt acts were committed within the Brownsville Division of the Southern District of Texas:

   *Overt Acts*

   1. On or about January 13, 1975, FRANK CHRISTIAN OLLER and DAVID TERANCE TULEY registered at the Ramada Inn, Brownsville, Texas.
   2. On or about January 15, 1975, at approximately 10:30 a.m., FRANK CHRISTIAN OLLER and DAVID TERANCE TULEY departed Apartment No. 1 at the Queen Isabel Inn, Port Isabel, Texas.

   3. On or about January 15, 1975, at approximately 11:45 a.m., FRANK CHRISTIAN OLLER and DAVID TERANCE TULEY departed the Ramada Inn, Brownsville, Texas.
   4. On or about January 15, 1975, at approximately 4 p.m., FRANK CHRISTIAN OLLER and DAVID TERANCE TULEY met at the Queen Isabel Inn, Port Isabel, Texas.
   5. On or about January 16, 1975, at approximately 9 a.m., FRANK CHRISTIAN OLLER and ROBERT JOSEPH MULLER, SR., had a conversation near the Queen Isabel Inn, Port Isabel, Texas.
   6. On or about January 16, 1975, at approximately 12 noon, DAVID TERANCE TULEY drove a 1974 Chevrolet truck, bearing 1974 Oklahoma license 514 718, on U.S. Highway 83 near Mercedes, Texas.
   7. On or about January 16, 1975, FRANK CHRISTIAN OLLER drove a Champion Motor Home, bearing 1975 Oklahoma license 6723, on the beach at South Padre Island.

   COUNT 2: That on or about January 16, 1975, within the Brownsville Division of the Southern District of Texas, and within the jurisdiction of this Court, FRANK CHRISTIAN OLLER, ROBERTO (sic) JOSEPH MULLER, SR., and DAVID TERANCE TULEY did knowingly and intentionally possess, with intent to distribute, approximately five hundred forty-six (546) pounds of marihuana, a controlled substance under Schedule I of the Controlled Substance Act of 1970, contrary to Section 841(a)(1), Title 21, United States Code.

and 2 of the Queen Isabella Inn at Port Isabel, Texas, was also involved in transporting large quantities of marijuana from the border area to the Oklahoma City area, and that Tuley and Oller had been observed visiting Muller at his apartment. The description of the vehicles, bearing Oklahoma licenses, and the presence of the two suspects in the indicated rooms at the Ramada Inn were verified from observation by the agents.

Further surveillance conducted on January 14, 1975 showed that the vehicles had been driven to Port Isabel, Texas, where the drivers were seen entering Apartments 1 and 2 of the Queen Isabella Inn, which were rented to Muller. Later that evening a mobile home was driven to a deserted beach area on South Padre Island. Between January 14 and January 16 the vehicles made several trips stopping at the Ramada Inn, the Queen Isabella Inn and the adjacent beach area at South Padre Island.

On January 16 Tuley was arrested in the pickup truck as it moved from Port Isabel westward in the direction of McAllen, Texas. A search of the vehicle and attached camper produced a .38 caliber pistol and marijuana debris. Tuley told the arresting agents that he was hired by unknown persons in Oklahoma City to assist in transporting a large quantity of marijuana to the Oklahoma City area and that the marijuana could be found in a motor home on South Padre Island Beach. A search warrant was issued for the motor home which resulted in the search and discovery of 546 pounds of marijuana and the arrest of Oller. Oller stated that he was an employee of Robert Muller of Apartment 1–2 of the Queen Isabella Inn and that he had observed cocaine in that apartment within the past twenty-four hours. He also told the arresting officers that Muller had a large sum of money in the apartment to be used for the purchase of large quantities of narcotics such as marijuana, heroin and cocaine. Upon the basis of the discovery of marijuana in the motor home driven by Oller, the statements made by him at the time of arrest, and advice secured from the

management of the Queen Isabella Inn that Muller had paid rent for Apartment 1–2 which he had occasionally occupied for approximately six months, a search warrant was issued for the apartment of Muller. A search of those premises revealed 185 Benzedrine tablets, 250 Valium tablets, numerous firearms and 2 pounds of marijuana. Muller was thereupon arrested.

■ In affirming the convictions of Tuley and Oller, we found the searches of the camper and motor home to be constitutionally permissible because of the corroboration by the agents, through surveillance and investigation, of the details furnished by the informant. *See United States v. Tuley, supra.* A further basis for sustaining the validity of the motor home search was the result obtained from the search of the camper. We noted: "Assuming the legality of the initial search of the camper, the fruits of that search were properly used to establish probable cause in a subsequent search. *See Wong Sun v. United States,* 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441." 546 F.2d 1264, at 1268 n. 6. Likewise, the fruits of the search of the motor home, coupled with the prior knowledge of the agents based on information received and corroborated by independent observation, provided a sufficient basis for the issuance of a search warrant for Muller's apartment. *See United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

*Evidence at the Trial.*

State Agent Carlos Torres testified that on January 5, 1975 he learned from a confidential informant that a person by the name of Robert Muller was staying at the Queen Isabella Inn at Port Isabel. The informant described Muller and the pattern of activities that usually followed upon his frequent visits to the apartment. Upon his arrival all kinds of people would show up, driving cars from various parts of the country. On several occasions campers and other vehicles would be jacked up and plastic

bags would be taped under their frames. It was also customary for a Mexican male to show up after Muller arrived who would depart shortly thereafter. Muller always carried lots of money. Surveillance of the Queen Isabella Apartments was set up and on January 6 Agent Torres saw Muller arrive followed by several cars, two of which bore Oklahoma license plates. Various people were seen coming and going through the apartment door which was always opened by Muller. On January 13 Agent Torres met with another informant who advised him that two men, driving a camper and a mobile home vehicle, had registered in Rooms 113 and 133 at the Ramada Inn, Brownsville, Texas. Their purpose was to transport a large amount of marijuana back to Oklahoma City. Torres communicated this information to Federal DEA Agent Roy Lofstrom, and the two of them together with Federal DEA Agent Gary Morrison continued the surveillance.

DEA Roy Lofstrom testified that on January 14 Tuley and Oller left the Ramada Inn in the camper and mobile home, respectively. They made successive stops at the beach area on Padre Island and the Queen Isabella Inn where they were seen entering the apartment of Muller. On the following day several trips were made by the camper to and from the Queen Isabella Inn and the beach area at South Padre Island. On January 16 Muller and Oller exited the Muller apartment together and were seen to converse. Agent Lofstrom then recounted substantially the same details to which he had testified at the suppression hearing, relative to the arrests of Tuley and Oller and their statements at the time of arrest, and the ensuing arrest of Muller. Testimony of an assistant manager of the Queen Isabella Inn established that Muller had paid rent for Apartment 1–2 for the months of December 1974 and January 1975.

The Government thereafter called as its witnesses Tuley and Oller. Tuley denied knowing anything about a "marijuana deal." Oller, relying on his Fifth Amendment rights, refused to answer questions relating to his involvement in the marijuana venture. He denied making any statement inculpating Muller to the arresting officers. The essence of Oller's testimony was that he was in Texas in connection with certain land deals. He admitted, however, that he was working with Muller and that he had known him for many years, having grown up with Muller's children.

■ Appellant Muller contends that the declarations of defendants Tuley and Oller, testified to by Agent Lofstrom, were taken subsequent to their arrest and consequently were made after the alleged conspiracy had ended.[3] He contends, therefore, that they were improperly admitted by the trial court as exceptions to the hearsay rule. Without such testimony, appellant argues, there was insufficient evidence to convict as there was no direct evidence tending to show that Muller was ever at or near the mobile home from which the contraband was seized. Our review of the transcript shows that the district judge carefully instructed the jury in each instance that it was not to consider these out-of-court statements for purposes of determining whether defendants Muller and Oller were members of the conspiracy. Our review further shows that, apart from the inculpatory statements of Tuley and Oller, there was abundant evidence to prove the conspiracy count against Muller.

■■ The evidence shows that approximately 546 pounds of marijuana, the basis of the indictment against Muller, were found in Oller's mobile home. An additional amount of 2 pounds was seized in Muller's apartment. The jury was aware through Oller's testimony that he was a

---

3. Hearsay declarations of absent coconspirator made in the course of and in furtherance of a conspiracy come within an exception to the hearsay rule. *United States v. Kessler,* 5 Cir., 1976, 530 F.2d 1246; *United States v. Register,* 5 Cir., 1974, 496 F.2d 1072. However, the statement of a conspirator after he has been apprehended is not in furtherance of the conspiracy and therefore inadmissible against a coconspirator. *Fiswick v. United States,* 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1974); *United States v. Sisto,* 5 Cir., 1976, 534 F.2d 616.

convicted codefendant of Muller. There was direct evidence that Oller frequented the Muller apartment during the time of the alleged conspiracy and that his mobile home was observed on several occasions parked in front of Muller's apartment and traveling to and from there to the deserted beach area, suspect because of its proximity to the Mexican border. Shortly prior to Oller's arrest he was seen conversing with Muller. Oller had known Muller since childhood. Additionally, and most significantly, there was the testimony of Oller that he worked with Muller. The jury apparently discredited Oller's characterization of the nature of that work. From the established facts the inference that Muller was part of the conspiracy was a reasonable one. While each of these acts considered alone may have been insufficient to establish Muller's guilt, considered cumulatively they were adequate to justify the jury verdict on the conspiracy count. Acts which are not per se unlawful lose that character when they become constituent elements of a criminal conspiracy. *United States v. Barrera,* 5 Cir., 1977, 547 F.2d 1250.

■ The necessary proof to sustain a charge of conspiracy is so well established that it needs little elaboration. It requires as a minimum an agreement to defraud the government, the existence of which may be proved by inferences from actions or circumstantial evidence of a scheme; knowledge by the accused of its existence; an intention by him to join and cooperate in the illegal venture; and one overt act in furtherance of the conspiracy.

■ The same test for judging the sufficiency of the evidence applies whether that evidence is direct or circumstantial, that is, whether the evidence would permit the triers of fact to find the defendant guilty beyond a reasonable doubt. *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Gomez-Rojas,* 5 Cir., 1975, 507 F.2d 1213; *United States v. Warner,* 5 Cir., 1971, 441 F.2d 821; *United States v. Haggins,* 5 Cir., 1977, 545

F.2d 1009; *United States v. Barrera, supra.* Our careful review of the evidence leads us to the definite proof of Muller's participation in the conspiracy to the satisfaction of the jury and that under the guiding principles of *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942),[4] the conviction must stand.

■ Muller was sentenced to five years' imprisonment and a special parole term of two years on each of the two counts, the sentences to run concurrently. Having affirmed appellant's conviction on the conspiracy count, under the concurrent-sentence doctrine it is unnecessary to determine the sufficiency of the evidence under the remaining substantive count. *Hirabayashi v. United States,* 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); *United States v. Ragano,* 5 Cir., 1975, 520 F.2d 1191; *United States v. Stone,* 5 Cir., 1973, 472 F.2d 909.

AFFIRMED.

---

4. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.