**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Douglas David ASCARRUNZ,
Defendant–Appellant.**

**No. 87–2497
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 17, 1988.

Lloyd Jeffrey Wiatt, Los Angeles, Cal., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before POLITZ, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Appellant Douglas David Ascarrunz was convicted of conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute. We affirm.

I

In November, 1985, Victor Lugo, an employee of the Webb County Sheriff's Department on special assignment to the drug task force of the Drug Enforcement Administration, and informant William Gholson, representing themselves to be drug traffickers, arranged a meeting with Alfredo Bernello–Orozco (Bernello) to discuss a purchase of cocaine. All three flew to Miami on December 4, 1985, to meet with Jorge Silva–Piedrahita (Silva), whom Bernello called his "source." Silva, Lugo, Gholson, and Bernello discussed arrangements for delivery of sixty-five kilograms of cocaine to Laredo, Texas. Their plan called for Gholson to meet Silva in Los Angeles to verify the quality of cocaine; Bernello, meanwhile, would meet Lugo in Laredo to assure the availability of the money to pay for the cocaine. Silva and Gholson then would fly to Laredo for the delivery. The group decided the next day that Silva and Gholson would fly into Freer, Texas. Lugo and Gholson then returned to Texas.

On December 6, Gholson flew to Los Angeles but Bernello was unable to go to Laredo. At approximately 4:40 p.m. on December 7, Gholson, Silva, Julian Biron Restrepo, and appellant Ascarrunz flew into Freer, and were met by Lugo. Silva introduced Ascarrunz as "my pilot." Silva and Ascarrunz then unloaded one suitcase from the cabin of the plane and two from the tail compartment, and Silva, Restrepo, and Lugo, each carrying one suitcase, placed them in Lugo's car. Ascarrunz stayed with the plane, stating, "I am not going with the dope. Send a car to come pick me up, or come back to pick me up after you guys finish doing your deal." He was arrested after Lugo's car left.

During the trip to Laredo, and after Ascarrunz' arrest, Lugo asked Silva about Ascarrunz. Silva replied that Ascarrunz could be trusted and that the cost of Ascarrunz' service was to be discounted against the money that Ascarrunz owed Silva for cocaine. Silva and Restrepo were arrested when they arrived in Laredo.

Ascarrunz was tried jointly with Silva and Restrepo. All were convicted of conspiracy to possess a controlled substance with intent to distribute under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

On appeal Ascarrunz raises four issues. First, he argues that the jury should have been instructed that it first must find Ascarrunz was a conspiracy member independent of Silva's statement to Lugo before it could consider Silva's statements. Second, he contends that Silva's statement was inadmissible because the conspiracy ended once Ascarrunz was arrested. Third, he alleges that the evidence is insufficient to support his conviction. Finally, he contends the district court should have granted his pre-trial motion to sever his case. We reject these arguments and affirm.

II

Ascarrunz first contends that he was entitled to an instruction that the jury must find a conspiracy existed before it considered the statements of Silva, the alleged coconspirator. Because he believes the independent evidence of his involvement in a conspiracy was slight, Ascarrunz argues that the court should not have permitted the jury to hear Silva's statements made in the car to Lugo absent cautionary instructions.

■ Silva's statements in the car about Ascarrunz to Lugo are said to be hearsay. However, a statement is not hearsay if it is "a statement made by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). In determining its applicability, the district court first must decide that there is enough evidence of a conspiracy involving the declarant and the nonoffering party and that the statement was made "in the course of and furtherance of the conspiracy." *See Bourjaily v. United States,* —— U.S. ——, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). If these preliminary facts are disputed, the offering party must prove them by a preponderance of the evidence. *See id.,* 107 S.Ct. at 2779.

■ The trial court followed the procedures we established in *United States v. James,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). In *James,* we required the trial court to make his preliminary determination without considering the offered statement. *Id.* at 581. This the trial court did.

*Bourjaily,* however, modifies *James.* The Supreme Court allowed the trial court to consider the hearsay statements sought to be admitted along with the other evidence when making a preliminary determination as to the conspiracy's existence and the defendant's participation in it. *See Bourjaily,* 107 S.Ct. at 2782. Although the dictates of *James* are not otherwise changed, *Bourjaily* "abolishes our *James* constraints," to this extent. *United States v. Perez,* 823 F.2d 854, 855 (5th Cir.1987).

Because the trial court made its conspiracy determination without considering Silva's remarks, *Bourjaily's* less rigorous requirements support their admission. Having made its preliminary determination the district court need not consider an instruction to the jury. *See United States v. Elam,* 678 F.2d 1234, 1249–50 (5th Cir. 1982).

### III

Ascarrunz next argues that Rule 801(d)(2)(E) did not apply because Silva's statements were not made during the course and in furtherance of a conspiracy. Ascarrunz reasons that the conspiracy, at least as to him, ended with his arrest.

■ We disagree. It is true that statements made by an arrested coconspirator cannot be used against his fellow coconspirators. *See United States v. Barnes,* 586 F.2d 1052, 1059 (5th Cir.1978); *United States v. Muller,* 550 F.2d 1375, 1379 (5th Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). As the Ninth Circuit has recognized, however, "the converse is not true; statements made by an *unarrested* co-conspirator who is still operating in furtherance of the ongoing conspiracy may be introduced against the arrested conspirator." *United States v. Taylor,* 802 F.2d 1108, 1117 (9th Cir.1986) (emphasis in original), *cert. denied,* —— U.S. ——, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987); *see also United States v. Disbrow,* 768 F.2d 976, 982 (8th Cir.) (stating that "the arrest of one coconspirator does not necessarily terminate the conspiracy"), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 577, 88 L.Ed. 2d 560 (1985); *United States v. Register,* 496 F.2d 1072, 1079 (5th Cir.1974) ("[I]f coconspirators still at large are fully capable of perpetuating an on-going conspiracy, it is entirely possible that they and their arrested brethren may make statements intended to further effectuate the conspiracy.").

■ This distinction is consistent with the rationale for admitting out of court statements by a defendant's coconspirator, which is that the declarant is the agent of the defendant. *See generally* 4 J. Weinstein and M. Berger, Weinstein's Evidence ¶ 801(d)(2)(E)[01] (1987). The drafters of Rule 801(d)(2)(E) opted for an agency rationale in requiring that the statement be "in furtherance of the conspiracy"; this condition "imposes conventional agency theory that the acts of the agent bind his principal only when the agent acts within the scope of his authority." *Id.* at 801–233. When arrest has ended a defendant's membership in the conspiracy it is difficult to see how his statements thereafter could be in fur-

therance of the conspiracy. An unarrested conspirator, however, still may make statements in furtherance of the conspiracy and be considered an agent of the defendant. *Cf. United States v. Killian*, 639 F.2d 206, 209 (5th Cir.1981) ("A member of a conspiracy continues to be responsible for acts committed by coconspirators even after the former's arrest unless he has withdrawn from the conspiracy."), *cert. denied*, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1982). Allowing such statements against an already arrested coconspirator declines to recognize that an arrest operates as a withdrawal as a matter of law.

The issue then is whether Silva's statements were made "in furtherance of the conspiracy." We have shunned an overly literal interpretation of this phase. *See United States v. Rodriguez*, 689 F.2d 516, 519 (5th Cir.1982). Silva believed that Lugo was a partner-in-crime. Because his responses to Lugo's queries about Ascarrunz were meant to allay any suspicions Lugo might harbor about Ascarrunz they thus were made in furtherance of the conspiracy. *See United States v. James*, 510 F.2d 546, 549–50 (5th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975).

The cases to which Ascarrunz refers us are inapposite. In *United States v. Sisto*, 534 F.2d 616 (5th Cir.1976), the statement was made a month after the defendant's arrest and was not made in furtherance of a conspiracy. In *United States v. Killian*, 524 F.2d 1268 (5th Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1667, 48 L.Ed.2d, 177 (1976), the conspiracy charged in the indictment was ended by arrests made hours before the statement sought to be admitted. We already have noted that *Barnes* and *Muller*, to which Ascarrunz also refers us, addressed situations in which the statements of an *arrested* conspirator were sought to be admitted. Silva's statements to Lugo were made during the course of a conspiracy and in furtherance of a conspiracy, and thus properly were admitted under Rule 801(d)(2)(E).

IV

Ascarrunz next argues insufficient evidence existed to support the convictions. On review, however, the evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). A jury may choose among reasonable constructions of the evidence and we view the evidence in the light most favorable to the government. *Id.*

To prevail in drug conspiracy cases under § 846, the government must prove beyond a reasonable doubt that a conspiracy existed, that the defendant knew of the conspiracy, and that he knowingly and voluntarily joined it. *See United States v. Jackson*, 700 F.2d 181, 185 (5th Cir.), *cert. denied*, 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983). As Ascarrunz correctly notes, mere close association with a coconspirator will not alone support an inference of participation in the conspiracy, although the jury may rely on association along with other evidence to find a conspiracy. *See United States v. Magee*, 821 F.2d 234, 239 (5th Cir.1987).

Here sufficient evidence existed to support a conspiracy conviction. Ascarrunz flew the plane to Freer and helped Silva remove suitcases from the plane. He also told Lugo and Silva that he would stay by the plane rather than go with the drugs. Finally, Silva told Lugo that Ascarrunz could be trusted.

A conviction for possession with intent to distribute requires the government to prove beyond a reasonable doubt three elements: "(1) knowing (2) possession of [cocaine] (3) with intent to distribute it." *United States v. Richards*, 638 F.2d 765, 768 (5th Cir.), *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981). Constructive possession will support a conviction and can be established by circumstan-

tial evidence. *See United States v. Love,* 599 F.2d 107, 109 (5th Cir.), *cert. denied,* 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312 (1979). "Constructive possession may be proved by a defendant's ownership, dominion or control over the contraband itself or over the premises or vehicle in which the contraband is concealed." *Id.* Mere association with the person who controls the contraband will not support a finding of possession. *Id.*

 Ascarrunz piloted the plane transporting the cocaine and removed from the plane the suitcases containing the contraband. His statement that he was not going with the drugs indicates he knew both that cocaine was in the suitcase and that it was intended for distribution. This evidence is sufficient to support a conviction under 21 U.S.C. § 841. It also permits the conclusion that he aided and abetted the conspiracy within the meaning of 18 U.S.C. § 2. We thus reject Ascarrunz' contention that the evidence did not support the convictions.

### V

 Finally, we turn to the argument that the district court erred in not granting Ascarrunz' motion to sever. Trial courts have the discretion to grant a severance if it "appears that a defendant ... is prejudiced by a joinder of offenses or of defendants...." Fed.R.Crim.P. 14. We review denials of Rule 14 motions only for abuse of discretion. *See United States v. Williams,* 809 F.2d 1072, 1084 (5th Cir.), *vacated in part on other grounds,* 828 F.2d 1, *cert. denied,* — U.S. —, 108 S.Ct. 228, 259, 98 L.Ed.2d 187 (1987).

Ascarrunz hoped that Silva would testify on his behalf at a separate trial. To be entitled to the severance, Ascarrunz must show "(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant will in fact testify." *Id.* Ascarrunz failed to do this. After the court denied the motion, the trial judge told Ascarrunz he would reconsider the motion if Ascarrunz submitted some verification that Silva did not intend to testify at his own trial and a statement concerning the specific matters about which Silva would testify at a separate trial. Ascarrunz did not comply with the court's request.

Nor has Ascarrunz demonstrated the necessary compelling prejudice against which the trial court must be unable to afford protection. *Id.* He merely provides us with conclusory statements about abuse of discretion. Without a showing of compelling prejudice we will not find error in the court's denial of Ascarrunz' motion to sever.

AFFIRMED.