**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Shannon Blake TRIPLETT,**
**Defendant–Appellant.**

No. 90–1181.

United States Court of Appeals,
Fifth Circuit.

Jan. 18, 1991.

Coyt Randal Johnston, Johnston & Budner, Dallas, Tex. (court appointed), for defendant-appellant.

Mark Nichols, Asst. U.S. Atty., Amarillo, Tex., Delonia A. Watson, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before WISDOM, KING, and BARKSDALE, Circuit Judges.

WISDOM, Circuit Judge:

This case is an appeal from a conviction for arson under 18 U.S.C. § 844(i) and 18 U.S.C. § 2 and for serving as an accessory after the fact in violation of 18 U.S.C. § 3. We AFFIRM.

## I.

On April 4, 1989, Shannon Blake Triplett was indicted by a grand jury in a one-count instrument which charged that he and Richard Snyder, aided and abetted by each other, did maliciously damage and destroy, and attempt to damage and destroy by means of a fire, a building used in and affecting interstate commerce, in violation of 18 U.S.C. § 844(i) and 18 U.S.C. § 2. On August 16, 1989, a superseding indictment was filed as to Triplett only, charging the original arson count and adding a second count alleging that Triplett, having knowledge of the commission of an offense against the United States, did relieve, comfort, and assist Snyder to hinder and prevent Snyder's apprehension, trial, and punishment, in violation of 18 U.S.C. § 3.

Triplett, whose trial was severed from Snyder's, pleaded not guilty. Triplett was found guilty by a jury on both counts, and on March 8, 1990, the district court sentenced Triplett to a prison term of 1,188 months on the first count and a prison term of 108 months on the second count, to be

served concurrently. A five year term of supervised release and an assessment of $100 were also imposed.

Triplett's conviction was the result of a jury finding that he had been involved in setting a fire that, in the early morning hours of January 16, 1989, destroyed apartment 131 of the Spring Valley Apartments in Richardson, Texas. The fire claimed the lives of 29–year–old Jenny Kale Christenson, (Jenny), the lessee of the apartment; her 14–year–old daughter, Nancy Kale; Nancy's three-month-old daughter; and Michael Diggs, a hitchhiker Jenny picked up, who had been staying in the apartment for about a week before the fire.

## II.

Triplett argued five points on appeal. (1) The evidence was insufficient to support a verdict that Triplett, either as a principal or as an aider and abettor, committed arson. (2) The evidence was insufficient to show that Triplett served as an accessory after the fact in connection with Snyder's offense. (3) The district court erred by finding that certain statements made by Snyder were admissible as admissions against his penal interests and as statements made in furtherance of a non-charged conspiracy. (4) The district court erred by refusing to permit Triplett to elicit expert testimony as to whether his ingesting of controlled substances would cause him to become enraged. (5) The district court abused its discretion by refusing to permit Triplett to impeach a government witness regarding an alleged suicide attempt by that witness.

A. *Whether the evidence was sufficient to support a verdict that Triplett, either as a principal or an aider and abettor, committed arson.*

■ The standard of review that this Court applies in reviewing sufficiency of

the evidence claims is whether, after viewing the evidence presented and all inferences that may reasonably be drawn from it in the light most favorable to the prosecution, any reasonably-minded jury could have found that the defendant was guilty beyond a reasonable doubt. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. Roberts,* 913 F.2d 211, 217 (5th Cir.1990); *United States v. Anchondo-Sandoval,* 910 F.2d 1234, 1236 (5th Cir. 1990); *United States v. Kim,* 884 F.2d 189, 192 (5th Cir.1989); *United States v. Ortiz-Loya,* 777 F.2d 973, 979 (5th Cir.1985). The evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). *See also United States v. Ascarrunz,* 838 F.2d 759, 763 (5th Cir.1988).

■ To uphold Triplett's conviction and sentence for violating 18 U.S.C. § 844(i),[1] this Court must find that the government proved beyond a reasonable doubt that Triplett (1) maliciously damaged or destroyed a building, or attempted to do so; (2) that Triplett damaged or destroyed the building by means of fire; (3) that the building was being used in interstate commerce or in an activity affecting interstate commerce; and (4) that the fire resulted in the death of a person.

■ To uphold Triplett's conviction for violating 18 U.S.C. § 2,[2] this Court must

---

1. 18 U.S.C. § 844(i) provides:
 Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both; ... and

if death results to any person, ... shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in § 34 of this title.

2. 18 U.S.C. § 2 provides:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, com-

find that the government proved that Triplett "willfully associated himself in some way with the criminal venture and willfully participated in it as he would in something he wished to bring about." *United States v. Ortiz–Loya*, 777 F.2d 973, 980 (5th Cir. 1985). "Association" means that the defendant shared in the criminal intent of the principal. "Participation" means that the defendant engaged in some affirmative conduct designed to aid the venture. *Id.* at 980 (citing *United States v. Colwell*, 764 F.2d 1070, 1072 (5th Cir.1985)). *See also United States v. Kaufman*, 858 F.2d 994, 1002 (5th Cir.1988); *United States v. Manotas–Mejia*, 824 F.2d 360, 367 (5th Cir. 1987); *United States v. Weddell*, 800 F.2d 1404, 1408 (5th Cir.1986). Thus, an aiding and abetting offense has two components: (1) an act by a defendant which contributes to the execution of the criminal activity, and (2) the intent to aid in its commission. *See United States v. Stovall*, 825 F.2d 817, 827 (5th Cir.1987).

Triplett contends that no one saw him actually set the fire and that the government's evidence never established that the origin of the fire was incendiary. Viewed in the light most favorable to the government, we find the evidence at trial sufficient to support Triplett's conviction.

██ At trial, expert witnesses testified that the fire was not accidental and that it was likely that an accelerant was used to set the fire. A sample of kerosene was found in only one location in the apartment; however, the burn pattern in the bottom portion of the apartment indicated that an accelerant had been poured heavily over the bottom portion of the apartment. Experts testified that there are several reasons why signs of an accelerant might not remain after a fire. We find that this evidence was sufficient to establish that the fire was intentionally set.

██ At trial, evidence was also presented to show that Michael Diggs placed a 911 call from the upstairs bedroom of Jenny's

apartment at approximately 2:54 a.m. Diggs passed out during that call and died in the bedroom.

A neighbor whose bedroom was next to Jenny's apartment, Mary Yates, testified that after midnight, she heard arguing between Jenny and one or two unidentified males from the upstairs bedroom. She stated that this argument lasted about an hour and a half. At the time of the argument, there were three men in the apartment, Snyder, Triplett, and Diggs.

Yates also testified that after the argument ended, she saw two men standing outside the fence of her apartment for about five or ten minutes. She described one man as about 5′7″ to 5′8″ in height, with blonde hair, and, at trial, she identified this man as Snyder. She described the second man as about the same height, with reddish-blond hair, and wearing white tennis shoes. Triplett is 6′1″; however, at trial, Yates estimated his height as being 5′8″. His hair is a dark red, and his nickname is "Red". Triplett, however, was not wearing tennis shoes when he was taken into custody the morning after the fire.

When Yates went back to bed, the men were still standing by the fence. After returning to bed, she dozed off and was awakened by smoke. Yates testified that she smelled smoke and noticed the fire about five or ten minutes after she laid down.

At trial, there was also testimony from Mark Engles, a drug-trafficking friend of Triplett's, that he had seen Snyder and Triplett arrive at the parking lot of the Rodeway Inn at about 2:30 or 2:40 a.m. on the morning of January 16th. The Rodeway Inn is about a mile and a half away from the Spring Valley Apartments. Engles had called Triplett the night before at Jenny's to tell Triplett to come by the motel to give Engles the money Triplett owed him. Engles talked with Triplett in the parking lot for a few minutes, and either during, or just after this conversation, En-

---

mands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or

another would be an offense against the United States, is punishable as a principal.

gles testified that he saw smoke from the fire and heard sirens going down Spring Valley Road. The first fire trucks arrived on the scene at about 2:56 a.m.

The evidence also established that Triplett had begun staying at Jenny's apartment about one and a half weeks before the fire. Snyder had also started spending large chunks of time at the apartment and was to have become a rent-paying tenant.

On the Thursday before the fire, the manager of the apartment complex had told Jenny that Triplett would have to leave the apartment because he was not on the lease. The manager testified that Jenny told the manager that she would tell Triplett to leave. Jerry Davidson, a boyfriend of Jenny's, testified that he had told Jenny that Triplett was not the type of person she should have around. The record further indicates that Jenny told several people that she planned to tell Triplett to leave the apartment the night before the fire.

On the Saturday before the fire, at about 11:30 a.m., Jenny had a phone conversation with either Triplett or Snyder. Jenny was upset because her automobile, which Triplett had taken earlier, had broken down and because her daughter was with Triplett. At about 2:00 p.m. Triplett, Snyder, and Nancy returned together. Jenny and Triplett had a private conversation later that afternoon.

A friend of Jenny's, Jamie Price, and Price's child, had been in Jenny's apartment most of the day before the fire. Price left between 8:30 and 9:00 p.m. after Jenny asked her to. Price testified that Jenny indicated she thought there might be trouble when she told Triplett he would have to leave the apartment, and Jenny did not want Price and her child present. When Price left, Jenny's jewelry was on the table.

Later that night, between 10:30 and 11:00 p.m., Jerry Davidson returned to Jenny's apartment. Triplett, Snyder, Jenny, Nancy, the baby, Diggs, and George Woods, Nancy's boyfriend, were there. After smoking a marijuana cigarette, Jenny, Woods and Davidson went to the store. On the way home, they dropped Woods at a relative's house. Davidson and Jenny drove around and had a discussion in which Jenny told Davidson that she had tried to get rid of Triplett once but that he had come back. She said she was going to have Triplett leave upon her return to the apartment and that she would have the police take him away if she could not get him to leave willingly.

When Jenny and Davidson returned to the apartment, Triplett, Snyder and Diggs were there. Davidson left shortly after midnight. Triplett returned a tow chain to Davidson shortly thereafter.

Sometime later, Davidson heard a loud noise, similar to the sound of a car backfiring or a shotgun being fired. When he looked out his window, he saw the fire. Davidson went to Jenny's apartment, but he could not open the door. He threw a section of fence through a window, but could not enter the apartment. Davidson then called the Fire Department.

Tracy Williams, who had been at Jenny's apartment earlier on the day before the fire, testified that Triplett and Snyder came to her apartment about 2:30 a.m. the morning of the fire. Snyder asked her if she wanted to trade drugs for some jewelry. Some of the jewelry which Snyder wanted to trade was identified as Jenny's. The police later found the jewelry, which Snyder had shown to Williams, under the seat of the squad car in which Triplett and Snyder had ridden to the police station to give statements. Triplett said to Williams, " * * * Jenny. I don't live there anymore." Triplett asked Williams not to tell anyone that they had been to her apartment. When they saw Williams later that day, Triplett wanted to know what she had told the police. At that time, Triplett told Williams that Snyder had placed the jewelry under the seat of the police car.

When Triplett and Snyder were stopped by the Richardson police at Jenny's apartment complex on the morning of January 16th, they incorrectly identified themselves. Triplett gave statements, both written and oral, in which he indicated that he was with Snyder all night and that they had left the apartment together about 2:30 or 3:00 a.m.

Triplett also told the police that someone else had brought chemicals over to the apartment on the day before the fire. Both Triplett and Snyder denied that an argument had taken place after midnight.

Furthermore, Triplett admitted to his bail bondsman that he knew who had set the fire and that it was Snyder. Triplett told his bondsman that Snyder had brought chemicals over to Jenny's apartment. Triplett stated that he and Snyder had left the apartment together and returned thirty minutes later. Triplett also admitted that Snyder and he had taken Jenny's jewelry from the apartment.

■ Admittedly, most of the evidence relied upon by the government was circumstantial. We review circumstantial evidence under the same standard as direct evidence. *See Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Given the timing of the events and the jury's ability to judge the credibility of the witnesses, we find that the jury was justified in finding that Triplett was guilty as charged in Count 1 of the indictment. We find that the evidence, when viewed in the light most favorable to the government, was sufficient to establish beyond a reasonable doubt that Triplett, either as a principal or an aider and abettor, committed an act of arson.

B. *The evidence was sufficient to show that Triplett was an accessory after the fact in violation of 18 U.S.C. § 3 in connection with Richard Snyder's offense.*

■ To establish a violation of 18 U.S.C. § 3,[3] the government was required to prove that Triplett, knowing that Snyder had committed an offense, had given him comfort or assistance for the purpose of hindering or preventing Snyder's apprehension, trial, or punishment. *See United States v. Norton*, 464 F.2d 85 (5th Cir. 1972).

■ The evidence showed that Triplett admitted to his bondsman that he knew Snyder had set the fire. Triplett also told the police that someone else had brought chemicals over to the apartment the day before the fire, yet he told his bondsman that Snyder had taken the chemicals over to the apartment the night before the fire. Triplett admitted that they had taken the jewelry from the apartment. In addition, Triplett tried to aid Snyder in other ways. Triplett and Snyder both lied to the police as to their identities when questioned. Triplett was with Snyder when he hid Jenny's jewelry under the seat of the police car. Triplett and Snyder went to Tracy Williams's apartment shortly after the fire to trade jewelry (some of which was Jenny's) for drugs, and Triplett asked Williams not to tell anyone that they had been there. The night after the fire Triplett paid for the motel room in which he and Snyder stayed. We find that the totality of the evidence was sufficient to support the jury's verdict that Triplett was an accessory after the fact.

C. *The district court did not err in permitting the government to introduce statements made by Snyder since those statements were against his penal interests and were made in furtherance of a non-charged conspiracy.*

■ Triplett contends that the district court should not have permitted Yates to testify that Snyder, during an encounter in jail, told her that he could be convicted if Yates testified truthfully and that he was "going to get her". The district court overruled Triplett's objections to this testimony on the basis of Fed.R.Evid. 801(d)(2), the conspiracy exception; Fed.R.Evid. 804(b)(3), statement against interests; and Fed.R.Evid. 803(24) and 804(b)(5). This Court reviews a district court's ruling on admission of evidence for an abuse of discretion. *See United States v. Westmoreland*, 841 F.2d 572, 578 (5th Cir.), *cert.*

---

**3.** 18 U.S.C. § 3 provides:

Whoever, knowing that an offense against the United States had been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.

*denied,* 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 39 (1988).

Rule 801(d)(2)(E) provides that "a statement by a conspirator of a party during the course and in furtherance of the conspiracy" is admissible against a party defendant. *See United States v. Villarreal,* 764 F.2d 1048, 1050 (5th Cir.), *cert. denied,* 474 U.S. 904, 106 S.Ct. 272, 88 L.Ed.2d 233 (1985); *United States v. James,* 590 F.2d 575 (5th Cir.1979) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). "Even if a defendant has not been indicted for conspiracy, statements made by a non-testifying co-conspirator are admissible against the defendant if 'there is independent evidence of a concert of action,' in which the defendant was a participant." *United States v. Dawson,* 576 F.2d 656, 658 (5th Cir.1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 88 (1979) (quoting *Park v. Huff,* 506 F.2d 849, 859 (5th Cir.) *cert. denied,* 423 U.S. 824, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975)). *See also United States v. Peacock,* 654 F.2d 339, 349 (5th Cir.1981), *vacated on other grounds,* 686 F.2d 356 (5th Cir.1982), *cert. denied,* 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983).

■ In determining the applicability of Fed.R.Evid. 801(d)(2)(E), the district court must first decide that there is enough evidence of a conspiracy involving the declarant and the nonoffering party and that the statement was made in the course of and in furtherance of the conspiracy. *See Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987); *United States v. Lechuga,* 888 F.2d 1472, 1479 (5th Cir.1989). If these preliminary facts are disputed, the offering party must prove them by a preponderance of the evidence. *Bourjaily,* 483 U.S. at 176, 107 S.Ct. at 2779. *Bourjaily* allows the trial court to consider the hearsay statements along with the other evidence when making a preliminary determination as to the conspiracy's existence and the defendant's participation in it. *Id.* at 181, 107 S.Ct. at 2781–82. *See also United States v. Ascarrunz,* 838 F.2d at 762.

■ In Triplett's case, we find that the government did introduce sufficient evidence to establish a *prima facie* case of conspiracy. Evidence was presented that Triplett told the police that he had been with Snyder all evening on the night of the fire. Snyder was identified as standing outside the apartment with another man five to ten minutes before a neighbor smelled smoke. Snyder and Triplett were together about 1.5 miles from Jenny's apartment when the fire engines arrived. Triplett admitted to taking Jenny's jewelry and, along with Snyder, attempted to trade it for drugs a few hours after the fire. Triplett and Snyder both gave incorrect names to the police when questioned after the fire. Finally, Triplett admitted to his bondsman that Snyder had brought chemicals to Jenny's and started the fire. We find that the evidence established that Triplett and Snyder conspired to set fire to Jenny's apartment and to prevent their apprehension.

■ Triplett argues that even if the evidence established that he and Snyder were co-conspirators, Snyder's statement should not have been admitted because it was an independent statement by Snyder and was not made "in furtherance of a conspiracy" with Triplett. We disagree. This Court has "shunned an overly literal interpretation of [the] phrase" "in furtherance of the conspiracy." *United States v. Ascarrunz,* 838 F.2d at 763. *See also United States v. Lechuga,* 888 F.2d at 1480. The evidence shows that Snyder and Triplett conspired to avoid apprehension and, thereby, avoid punishment. Snyder's statements were made in furtherance of avoiding punishment. Yates could have easily interpreted Snyder's remarks to mean that he was going to get her if she testified against Triplett as well as himself, since her testimony was the same for both parties. There was enough evidence to find the existence of a conspiracy involving Triplett and Snyder and that Snyder's statements were made in furtherance of that conspiracy. The district court properly admitted Snyder's statements to Yates under Fed.R.Evid. 801(d)(2)(E).

■ Snyder's statements to Yates were also properly admitted as statements against interest under Fed.R.Evid. 804(b)(3).[4] If the declarant is unavailable to testify, "[a] statement which ... at the time of its making ... so far tended to subject [the declarant] to criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true," is admissible under Fed.R.Evid. 804(b)(3). *United States v. Vernor*, 902 F.2d 1182, 1186 (5th Cir.1990). To be admissible under Rule 804(b)(3), inculpatory statements against penal interest must meet a three part test:

(1) the declarant must be unavailable;

(2) the statement must so far tend to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and

(3) the statement must be corroborated by circumstances clearly indicating its trustworthiness.

The parties agreed that Snyder was unavailable as a witness. Snyder's threat would have subjected him to criminal liability for threatening a witness. Furthermore, Snyder's statements were against his penal interest. Snyder admitted to Yates that he was the person she had seen behind the apartment within minutes of smelling smoke. Snyder's statement to Yates that he could be convicted if she told the truth can also be construed as an admission that he knew her testimony would place him at the apartment building at the time the fire was set.

**D.** *The district court did not err in excluding expert testimony because it violated Fed.R.Evid. 704(b).*

At trial, Triplett attempted to introduce expert testimony bearing on intent. Triplett argues that this psychological testimony would have shown that he would not have set the fire as a result of an emotional state of rage induced by the drugs which he had taken. The district court prohibited such testimony on the grounds that it was speculative and in violation of Fed.R.Evid. 704(b)[5] which prohibits expert opinions as to whether a defendant did or did not have the mental state constituting an element of the offense. Although the district court refused to let the expert testify about Triplett's specific reaction to drugs, the court did offer to permit Triplett's expert to testify generally about the effect of drugs.

■ This Court does not construe Rule 704(b) strictly. *See United States v. Dotson*, 817 F.2d 1127, 1132 (5th Cir.) *vacated, in part, on other grounds*, 821 F.2d 1034 (5th Cir.1987). "It prohibit[s] only direct statement[s] on the issue of intent." *United States v. Masat*, 896 F.2d 88, 93 (5th Cir.1990).[6] Furthermore, a trial court's exclusion of expert testimony will not be reversed absent an abuse of discretion. *See United States v. Masat*, 896 F.2d at 94.

---

**4.** Fed.R.Evid. 804(b) provides:

(b) *Hearsay Exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.

. . . . .

(3) *Statement against interest.*
A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

**5.** Fed.R.Evid. 704(b) provides:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

**6.** *See also United States v. Newman*, 849 F.2d 156, 165 (5th Cir.1988) ("[t]he expert may not offer an opinion on the ultimate issues of whether the defendant was in fact induced to commit the crime or lacked predisposition"; but "may testify that the defendant's mental disease, defect or subnormal intelligence ... rendered him incapable of forming the specific state of mind required for the offense.")

■ We find that the district court did not abuse its discretion in refusing to let Triplett's expert testify as to how Triplett personally would have been affected by his ingestion of controlled substances. This would have been speculation on the expert's part and is clearly forbidden by Fed. R.Evid. 704(b).

E. *The district court did not abuse its discretion by refusing to permit Triplett to impeach a government witness regarding an alleged suicide attempt by that witness.*

■ Triplett contends that the district court erred when it refused to permit him to impeach Mary Yates with evidence that she had attempted suicide shortly after the fire. Triplett states that the matter of cross-examination of Yates on this subject had been discussed with the district judge, who indicated that he would bar this cross-examination, as it had been barred in Snyder's trial. The record discloses no attempt by Triplett to question Yates about a suicide attempt nor any request to the district court that he be permitted to do so. It was Triplett's responsibility to preserve error for appellate review. The propriety of the district court's decision to exclude such questions cannot be reviewed because Triplett failed to make an offer of proof at trial setting forth the substance of the questions and responses. *See United States v. Vitale*, 596 F.2d 688, 689 (5th Cir.), *cert. denied*, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979); *United States v. Fernandez–Roque*, 703 F.2d 808, 812–13 (5th Cir.1983). Triplett's offer to show that such an objection was made in Snyder's separate trial is not relevant nor is it an acceptable method of preserving an issue for appellate review.

### III.

For the reasons stated above, we AFFIRM.