STEWART, Judge.
Defendant, Daniel R. Lobato, was charged by bill of information with one count of conspiracy to possess marijuana with intent to distribute, in violation of LSA-R.S. 14:26 and LSA-R.S. 40:966. He was convicted by jury as charged and sentenced to 4½ years at hard labor and a $1250 fine. Defendant appeals his conviction and sentence. We affirm.
FACTS
On December 14, 1986, Louisiana State Police (LSP) Trooper Mike Epps stopped the defendant, Daniel R. Lobato for a routine traffic violation. Based upon articula-ble suspicions, Epps requested and received written consent to search the vehicle. Pursuant to that search, marijuana gleanings were found in a suitcase which was located on the vehicle’s back seat. After being placed under arrest, Lobato reached under his shirt and produced approximately $18,-000 in cash. Lobato stated that the money was for a roofing job and did not belong to him.
At Louisiana State Police headquarters in Monroe, LSP Sgt. James Cannon talked with Lobato in an effort to further investigate the matter. Lobato agreed to cooperate with the State Police. According to a plan devised by the police and Lobato, Lo-bato contacted Robert Phillips and told Phillips he had been robbed at a truck stop by associates of Gary Veazey. After several telephone calls, Veazey met Lobato at the Monroe Airport. The calls between Lobato and Phillips, and between Lobato and Veazey, were recorded by the police. Lobato was wearing a recording device when he met with Veazey and their conversation was also recorded. Veazey gave Lobato approximately $3,000 in cash which was the remaining balance Veazey owed to Phillips as payment for the marijuana.
At trial on January 8-11, 1990, Sgt. Cannon testified that during their conversations at police headquarters, Lobato admitted that he had been hired by Robert Phillips to transport approximately 15 pounds of marijuana from Austin, Texas to Jackson, Mississippi. The jury heard evidence that, after checking into’a . Holiday Inn in Jackson, Mississippi, Lobato was contacted by Gary Veazey who gave Lobato the $18,-000 cash as payment for the marijuana. Cannon testified that Lobato said he was to receive $400 from Phillips for delivering the marijuana and returning the money to Phillips.
Sgt. Cannon and others testified regarding Lobato’s cooperation with the police and the circumstances attendant to the recorded telephone calls and meeting. The recorded conversations were admitted into evidence.
Veazey testified that Phillips was to send him approximately 25 pounds of marijuana but that he did not know how Phillips was transporting the marijuana. On the morning of December 14, 1986, Veazey received a phone call from Phillips directing him to a Holiday Inn room where Veazey later contacted Lobato. Veazey retrieved the suitcase of marijuana from the vehicle driven by Lobato, took the suitcase containing marijuana to Veazey’s contact who paid Veazey for the marijuana, and returned the suitcase to Lobato’s vehicle at the hotel. Veazey paid Lobato the $18,000 cash and left. After receiving calls from Phillips, Veazey drove to Monroe and gave Lobato an additional $3,000. Veazey testified that he was concerned about whether someone who knew him committed the alleged robbery.
Lobato testified that he made no confession or admission to Sgt. Cannon. Lobato testified that, as he drove to Jackson, he did not know the suitcase was in the trunk of the vehicle. When Veazey gave him the $18,000 cash, Lobato was surprised be *1383 cause he was expecting a check. At that point, Lobato became nervous because he suspected that the cash was drug money.
The recorded conversations with Veazey and Phillips were made shortly after Loba-to’s December 14, 1986 arrest. Lobato testified that he was instructed what to say to Phillips and Veazey during those conversations. The next day, December 15, 1986, Lobato gave LSP Sgt. French a recorded statement in which Lobato denied knowledge of or participation in any conspiracy to possess marijuana with intent to distribute. This recorded statement was also admitted into evidence.
After trial by jury, Lobato was convicted as charged. He was subsequently sentenced to 4V2 years at hard labor and fined $1,250 plus costs or six months in default of fine and costs. Lobato appeals his conviction, asserting that the trial court erred by (1) allowing admission of the recorded statements as hearsay evidence, which occurred after his participation in any criminal conspiracy had concluded; (2) sustaining the state’s objection to Lobato’s testimony, as hearsay, when he attempted to relate the content of his conversations, thus effectively denying defendant an opportunity to present a defense; and (3) sustaining objections by the state which were general in form and for which no specific ground was stated. The defendant, Lobato, also assigns as error ineffective assistance of counsel due to conflict of interest where his counsel also represented Robert Phillips. Finally, Lobato challenges his sentence as excessive. We disagree.
DISCUSSION

The Recorded Conversations

The recorded conversations were made after Lobato’s arrest and pursuant to his cooperation with the police. Lobato contends that these conversations are hearsay and therefore inadmissible. The state asserts that the conversations are admissible as nonhearsay statements of co-conspirators pursuant to LSA-C.E. Art. 801 D(3)(b).
Hearsay analysis involves the following determinations: (1) whether the recorded statements are hearsay as defined by the evidence code; (2) whether they are, by definition, nonhearsay and therefore admissible; or (3) whether the statements, even though hearsay, are admissible under an exception to the hearsay rule. See Buckbee v. United Gas Pipe Line Co., 561 So.2d 76, 79 (La.1990).
Hearsay is an out-of-court statement offered to prove the truth of the matter asserted therein. LSA-C.E. Art. 801 C. Hearsay is generally not admissible. LSA-C.E. Art. 802. An out-of-court statement which is not “offered to prove the truth of the matter asserted therein” is, by definition, not hearsay. Such statement is therefore admissible if it is relevant and not otherwise excluded by the code of evidence.[1]
Many of the statements made by Lobato during the recorded conversations do not fall within the definition of hearsay because they were not offered to prove the truth of the statements themselves. It is undisputed that, at the time of the recorded statements, Lobato was assisting the State Police in their investigation of a conspiracy. Lobato’s post-arrest contact with Phillips and Veazey was pursuant to a plan devised by Lobato and the police. There is no indication in the record that Lobato’s statements during the recorded conversations were offered as statements of truth. Such statements, presented to the jury as false statements intended to induce the co-conspirators to act, are not hearsay by definition, and therefore are not barred by the hearsay rule. Further, statements of Lo-bato that were true would not be hearsay because they are admissions on his part which are not hearsay under our Code of LSA-C.E. Art. 801 D(2)(a).
Having determined that Lobato’s statements during the recorded conversations with his co-conspirators are not hearsay, *1384 we now examine whether the statements of Phillips and Veazey are hearsay.[2]
A statement is not hearsay if it is offered against a party, and is a statement made by a declarant while participating in a conspiracy to commit a crime and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy has been established. LSA-C.E. Art. 801 D(3)(b).
A prima facie case of conspiracy is presented when the state introduces evidence which, if unrebutted, would be sufficient to establish the fact of conspiracy. State v. Ester, 458 So.2d 1357 (La.App. 2d Cir.1984), writ denied, 464 So.2d 313 (La.1985); State v. Johnson, 438 So.2d 1091 (La.1983). Proof of a conspiracy may be made by direct or circumstantial evidence. Ester, supra; State v. Brown, 398 So.2d 1381 (La.1981). The utterances of the defendant can be used to prove a prima facie case of conspiracy. Ester, supra, citing State v. Rittiner, 341 So.2d 307 (La.1976).
The record reflects, and Lobato concedes, that the state proved a prima facie case of conspiracy. Lobato argues however that, once he was arrested and cooperated with the State Police, his participation in the conspiracy ended. He contends that the recorded statements were made pursuant to his post-arrest cooperation and assuming he had been part of the conspiracy, were made after his participation in the conspiracy had ended, making the statements those of former co-conspirators, not of co-conspirators.
LSA-C.E. Art. 801 is based upon the Federal Rules of Evidence. Comments, LSA-C.E. Art. 801. We are therefore persuaded by federal jurisprudence construing Fed.R.Evid. 801(d)(2)(E), which is substantially the same as LSA-C.E. Art. 801 D(3)(b). As noted in United States v. Patel, 879 F.2d 292 (7th Cir.1989), cert. denied, — U.S. -, 110 S.Ct. 1318, 108 L.Ed.2d 494 (1990), Lobato’s contention is not a bad argument. However, the fact that an arrested conspirator allies himself with the government has no effect on the continuing conspiratorial efforts of his un-arrested former associates. United States v. Lewis, 759 F.2d 1316 (8th Cir.1985), cert. denied, 474 U.S. 994, 106 S.Ct. 406-407, 88 L.Ed.2d 357. Statements made by an arrested co-conspirator cannot be used against his fellow conspirators. United States v. Ascarrunz, 838 F.2d 759 (5th Cir.1988). However, as stated in United States v. Taylor, 802 F.2d 1108 (9th Cir.1986), cert. denied, 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987):
[T]he converse is not true; statements made by an unarrested co-conspirator who is still operating in furtherance of the ongoing conspiracy may be introduced against the arrested conspirator.
Even when the arrested conspirator acts under the direction of government agents to obtain evidence against the co-conspirators, statements made by the conspirators to the arrested conspirator are admissible for the purposes of the co-conspirator non-hearsay definition. Id, at 1117; United States v. Hamilton, 689 F.2d 1262, 1269 (6th Cir.1982), cert. denied, 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983).
The rationale for admitting statements of co-conspirators as nonhearsay is based upon principles of agency. Ascarrunz, supra. Under this evidentiary analogy to agency, a member of a conspiracy continues to be responsible for acts com *1385 mitted by co-conspirators even after his arrest unless he has withdrawn from the conspiracy. United States v. Killian, 639 F.2d 206 (5th Cir.1981), cert. denied, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1982). The arrest of one co-conspirator does not necessarily terminate the conspiracy. United States v. Disbrow, 768 F.2d 976 (8th Cir.1985), cert. denied, 474 U.S. 1023, 106 S.Ct. 577, 88 L.Ed.2d 560 (1985). We must therefore determine whether Lo-bato’s arrest terminated his involvement in the conspiracy.
In Patel, supra, the court discussed various means of terminating one’s involvement in a conspiracy:
There is nothing in the rule about withdrawal, and of course a conspiracy could continue, and statements be made in the course and furtherance of it, after a particular member had withdrawn. But then it would not be a co-conspirator’s statement; it would be a former co-conspirator’s statement_ [Citation omitted.]
Making a clean breast to the government is one way of indicating that one has quit — although it is not conclusive, for one might make a clean breast one day and repent of it the next and resume participation in the conspiracy. Notifying one’s co-conspirators that one has quit is another way. Death is a third. One supposes there could be others.
Patel, supra, at 294. In 1931, the Louisiana Supreme Court discussed withdrawal in determining whether a defendant, who conspired to rob a bank, was culpable for a homicide committed by his co-conspirators during the bank robbery:
One who had joined in a common design to ... commit an unlawful act, the natural and probable consequence of the execution of which involves the contingency of taking human life, may escape responsibility by withdrawing from the undertaking before the homicide committed by a confederate, if such withdrawal is communicated to his associates under circumstances that would permit them to do likewise. But if his withdrawal is not communicated at all, or under such circumstances as would not permit his confederate to withdraw, he is responsible for the homicide committed by such confederate in pursuance of the original design, or as a natural or probable consequence of its execution. One’s withdrawal from the scene of the homicide intending that such action should advise his associates that he has withdrawn from participation in the common design may be considered in determining whether the withdrawal was communicated to his associates, but it does not necessarily establish the fact of the withdrawal or of its communication.
State v. Taylor, 173 La. 1010, 139 So. 463, 476 (1931). (Emphasis added.)
Affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators have generally been regarded as sufficient to establish withdrawal or abandonment. United States v. United States Gypsum Co., 438 U.S. 422, 464-465, 98 S.Ct. 2864, 2887, 57 L.Ed.2d 854 (1978). (Emphasis added.) The burden of proving withdrawal lies on the defendant. Patel, supra; Killian, supra.
Lobato has failed to carry his burden of proving that he withdrew from the conspiracy. Lobato confessed to Sgt. Cannon by detailing his involvement and that of co-conspirators Veazey and Phillips, and by cooperating with the police on the day of his arrest. However, on the very next day, he recanted his confession, claimed he was never part of the conspiracy, and maintained his innocence throughout trial. Under these circumstances, we do not conclude that Lobato made a “clean breast” to authorities. Further, he did not even attempt to communicate withdrawal to his co-conspirators. While performing his “act” during the recorded conversations, Lobato feigned anger and exasperation about the alleged robbery, as well as fear of the prospect of returning to Austin without the $18,000 Veazey had given him. His statements in the recorded conversations were designed to induce Phillips and Veazey to act, not to notify them of his arrest or withdrawal.
*1386 It can be argued that Lobato’s arrest terminated his involvement in the conspiracy, thus making the statements by Veazey and Phillips those of former co-conspirators. However, like the United States Fifth Circuit, we decline to recognize that an arrest operates as withdrawal as a matter of law.[3]
We recognize and distinguish State v. Hearold, 567 So.2d 132 (La.App.2d Cir.1990), writ granted, 577 So.2d 41 (La.1991), where we noted that, “[following arrest, any conspiracy that could have been shown to exist would have come to an end.” In Hearold, the defendant and the declarant were both under arrest before the declar-ant made inculpatory statements regarding the defendant’s involvement in the alleged conspiracy. There were no statements made by an unarrested co-conspirator, and there was no other evidence of a conspiracy. In the instant case, Lobato’s co-conspirators were still at large. There was ample evidence of a conspiracy, independent of the statements at issue. We limit the applicability of Hearold to the facts of that case.
Having concluded that Lobato failed to prove legal withdrawal from the conspiracy, we now consider whether the statements at issue were made in furtherance of the conspiracy.
A statement is in furtherance of the conspiracy if it can reasonably be interpreted either as encouraging a co-conspirator to advance the conspiracy, or as enhancing a co-conspirator’s usefulness to the conspiracy. United States v. Tarantino, 846 F.2d 1384, 1412 (D.C.Cir.1988), cert. denied, 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988). In order to satisfy the “in furtherance” requirement, the statement need not have been exclusively or primarily made to further the conspiracy. Garlington v. O’Leary, 879 F.2d 277 (7th Cir.1989). Included among statements held to have been made in furtherance of a
conspiracy are statements of reassurance and statements designed to induce a co-conspirator to act. Lewis, supra, at 1348.
A co-conspirator’s statement satisfies the “in furtherance” element of Rule 801(d)(2)(E) when the statement is “part of the information flow between conspirators intended to help each perform his role.” United States v. Van Daal Wyk, 840 F.2d 494, 499 (7th Cir.1988).... However, mere “idle chatter,” narrative declarations, and superfluous casual conversations do not constitute statements “in furtherance” of the conspiracy.
Garlington, supra. Whether a particular statement meets these criteria can only be determined by examining the context in which the statement was made. (Citation omitted.) Id.
The objective of the instant conspiracy was to export 15-25 pounds of marijuana from Phillips in Austin, Texas to Veazey in Jackson, Mississippi, and to transport the $21,000 cash payment back to Phillips. The reactions of Veazey and Phillips to Lobato’s false statements formed the substance of the recorded conversations. Phillips urged Lobato to calm down, stay in contact with him, and wait for help from Veazey. Phillips cautioned Lobato to stay away from the police and to not look or act suspicious. Veazey repeatedly interrogated Lobato on the facts surrounding the alleged robbery. Veazey ultimately drove to Monroe, Louisiana from Jackson, Mississippi and gave Lobato money to buy gas and $3,000 cash to deliver to Phillips.
It is apparent from the context of the statements that Veazey’s and Phillips’ statements were made in furtherance of the common enterprise and during its continuation. See State v. Johnson, supra. Lobato was arrested while the conspiracy was in media res. At the time of the conversations, Veazey’s payment for the marijuana had not yet reached Phillips. Veazey had given Lobato $18,000 but still *1387 owed Phillips $3,000 toward the $21,000 purchase price. The statements by Veazey and Phillips were designed to encourage completion of the illegal business transaction. Lobato was arrested before the objective of the conspiracy was reached and Veazey and Phillips were facilitating resolution of the “problem” affecting completion of the conspiracy’s objective. As a result of the conversations, Veazey gave Lobato the $3,000 balance owed on the marijuana purchase.
We also note that many statements in the recorded conversations do not fall within the definition of hearsay and are therefore not barred by the hearsay rule. The conversations are relevant to the central legal issue in this case: whether Loba-to knowingly participated in a conspiracy to possess marijuana with intent to distribute. The reactions of Veazey and Phillips to Lobato during the conversations are admissible to show their relationship with Loba-to. This relationship was demonstrated by the recorded conversations. The jury could gain insight into Lobato’s relationship i with the other declarants without assuming that the matters asserted in the conversations were true. Lobato’s relationship with the other declarants is highly probative to the issue of whether Lobato conspired with them. The veracity of the statements in the recorded conversations was neither determinative of, nor essential to, the relevancy of the statements. See Buckbee, supra, 561 So.2d at 81.
For the reasons stated above, we find the recorded conversations are nonhearsay as defined in LSA-C.E. Art. 801 D(3)(b), and therefore admissible unless otherwise excluded. Having listened to the cassette and microcassette tapes, we find that the trial court properly allowed the recorded statements to be admitted into evidence. This assignment of error has no merit.

Objections by the state

Lobato asserts as error that the trial court erroneously sustained the state’s hearsay objections to Lobato’s testimony, and thereby denied Lobato the opportunity to present a defense. Lobato also asserts as error the trial court’s ruling on objections by the state without requiring the state to indicate bases for the objections.
Error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected and the substance of the evidence was made known to the court by counsel. LSA-C.E. Art. 103 A(2). Error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and a timely objection or motion to admonish the jury appears of record, stating the specific ground of objection. LSA-C.E. Art. 103 A(1).
The record reveals that, as to these assigned errors, defense counsel neither made timely objection to the, court’s ruling nor made known the substance of the evidence.
It is also clear from the record that Loba-to presented to the jury a defense of no knowledge of, or participation in, the alleged conspiracy. Lobato testified that he made no confession or admission to Sgt. Cannon. Through Lobato’s testimony, the jury heard evidence which included the following: Lobato’s employer knew Phillips and recommended Lobato for the job of driving to Jackson, Mississippi to collect an overdue roofing debt owed to Phillips. As Lobato drove to Jackson, he did not know the suitcase was in the trunk of the vehicle. Upon arrival, Lobato called Phillips and, pursuant to that telephone conversation, Lobato checked into a hotel and notified Phillips of his location and room number. Lobato then received a call from a stranger who identified himself as Gary Veazey and as the person who owed the debt. When Veazey came to the hotel room, they introduced themselves and Veazey asked whether Lobato wanted to go with him. Instead, Lobato gave Veazey the keys to the vehicle he drove from Austin, and Veazey left the room. Lobato went back to bed and remained in the room. Veazey returned approximately four hours later with a bag containing slightly more than $18,000 in cash. Lobato was surprised because he expected the roofing debt to be paid by cashier’s check or money order. At that *1388 point, Lobato became nervous because he suspected that the cash was drug money.
The jury heard that, after the money was counted, Lobato checked out of the motel and left Jackson, heading back to Austin through Louisiana via 1-20. Lobato was stopped by Trooper Epps. The jury also heard that Lobato did not tell Sgt. Cannon that he was taking marijuana from Austin to Jackson for Phillips.
The jury heard further evidence that, with regard to the December 14, 1986 recorded conversations, Lobato was instructed what to say to Phillips and Veazey, as well as how to say it. The next day, December 15, 1986, Lobato gave LSP Sgt. French a recorded statement in which Lo-bato denied knowledge of, or participation in, any conspiracy to possess marijuana with intent to distribute. This recorded statement was also admitted into evidence.
Through Lobato’s testimony and defense counsel’s cross-examination and argument, Lobato did present a defense. Given Loba-to’s actual presentation of a defense and his failure to preserve this issue for appeal, we find no merit in these assignments of error.

Ineffective assistance of counsel

Lobato complains that, because his trial counsel also represented co-defendant and co-conspirator Robert Phillips, the conflict caused by this dual representation rendered his counsel ineffective at trial. As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post-conviction relief in the trial court where a full evidentiary hearing may be conducted. State v. Seay, 521 So.2d 1206 (La.App.2d Cir.1988); State v. Cupit, 508 So.2d 996 (La.App.2d Cir.1987), writ denied, 514 So.2d 1174 (La.1987). Only when the record discloses sufficient evidence to evaluate the claim when raised by assignment of error should the issue be addressed on appeal. Seay, supra; State v. Bonnett, 524 So.2d 932 (La.App.2d Cir.1988), writ denied, 532 So.2d 148 (La.1988); Cupit, supra.
During Lobato’s trial, defense counsel also represented Robert Phillips whose charges had not yet been set for trial. At trial, Lobato raised no objection to multiple representation. After the instant trial, the district court granted the state’s motion to disqualify Lobato’s trial counsel from subsequently representing a co-conspirator at the co-conspirator’s trial.
Multiple representation is not per se illegal and does not violate constitutional guarantees unless it gives rise to a conflict of interest. USCA-Const. amend. 6; LSA-Const. Art. 1 § 13; Seay, supra; State v. Kahey, 436 So.2d 475 (La.1983); Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer’s performance. Cuyler v. Sullivan, 446 U.S. at 348, 100 S.Ct. at 1718.
As stated in Seay, supra, at 1211,
An actual conflict of interest is established when the defendant proves that his attorney was placed in a situation inherently conducive to divided loyalties. Zuck v. Alabama, 588 F.2d 436 (5th Cir.1979), cert. denied 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979).
* * * * * *
A reviewing court cannot presume that multiple representation and the possibility of conflict has resulted in ineffective assistance of counsel.
Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. Cuyler v. Sullivan, 446 U.S. at 350, 100 S.Ct. at 1719. Lobato claimed throughout trial that he knew of, and participated in, no conspiracy and that he was merely on a mission to collect a roofing debt for Phillips. This defense may or may not be incompatible or inconsistent with various defenses which Phillips and Lobato’s counsel may or may not have considered at the time of Lobato’s trial. We do not presume that this multiple representation resulted in ineffective assistance of counsel. However, the record evidence regarding multi- *1389 pie representation is so sparse that it provides insufficient information for intelligent review of this assignment of error. Lobato’s remedy is therefore that of post-conviction relief where the quality of the attorney’s performance can be fully developed and explored. Seay, supra; State v. Prudholm, 446 So.2d 729 (La.1984).

Excessiveness of sentence

Lobato’s final assignments of error challenge his sentence as excessive. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Mims, 550 So.2d 760 (La.App.2d Cir.1989); State v. Hudgins, 519 So.2d 400 (La.App.2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988).
After determining whether the trial court has complied with the provisions of Art. 894.1, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence is unconstitutionally excessive in violation of LSA-Const. Art. 1 § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App.2d Cir.1989).
As a general rule, maximum sentences are appropriate only in cases involving the most serious violation of the offense and the worst type of offender. State v. Madison, supra. However, trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Hudgins, supra; State v. Madison, 535 So.2d 1024 (La.App.2d Cir.1988).
A trial court is not required to render a suspended sentence or probation on a first felony offense. The trial court may consider whatever factors and evidence it deems important to a determination of the best interest of the public and the defendant. State v. McKethan, 459 So.2d 72 (La.App.2d Cir.1984); State v. Tully, 430 So.2d 124 (La.App.2d Cir.1983), writ denied, 435 So.2d 438 (La.1983).
At the sentencing hearing, the trial court indicated that it had very carefully reviewed the pre-sentence investigation report (PSI) and considered the guidelines provided by Art. 894.1. The trial court noted Lobato’s age of 29, his residence in Texas, the fact that Lobato was currently employed, and the fact that he had one child. Additionally, the trial court took into consideration several letters which were submitted by defendant’s employer. After reviewing the particulars of the offense, the court noted that Lobato’s conduct threatened serious harm by introducing a controlled dangerous substance into a community, and that he should have contemplated that his conduct would threaten this harm.
Turning to Lobato’s prior history of criminal activity, the court noted that the defen *1390 dant was convicted of DWI in 1983 and 1987 and that he had performed well under the supervision of his probation officer. The defendant had no prior felony record and was classified as a first offender.
The record reflects that the trial court more than adequately articulated the court’s reasons for sentencing, thus satisfying the first prong of the test for exces-siveness of sentence.
Defendant was convicted of conspiracy to possess marijuana with intent to distribute. The evidence at trial showed defendant transported a suitcase containing 15-25 pounds of marijuana across two state lines for a fee of $400. Defendant argues in brief “the crime of which defendant was charged and convicted is serious but victimless.” We are not persuaded by this argument. At the time of the offense, the maximum penalty was five years at hard labor and a $2,500 fine. (See LSA-R.S. 40:979 and 40:966 as they read in 1986.) The sentence imposed, 4½ years at hard labor and $1,250 fine plus costs or six months in default of payment of fine and costs was very near the maximum sentence allowable at that time, however, this fact alone does not make the sentence unconstitutionally excessive. Though the instant offense is Lobato’s first felony conviction, under the circumstances of this case, we do not find that the sentence is disproportionate or a needless imposition of pain and suffering. Given the seriousness of this offense, the sentence imposed is not unconstitutionally excessive. We find this sentence is within the discretion of the trial court.
CONCLUSION
For the above and foregoing reasons, we affirm Lobato’s conviction and sentence.
AFFIRMED.

. Examples of provisions which may exclude relevant evidence include LSA-C.E. Art. 403 (confusion, waste of time, danger of unfair prejudice), Art. 404 (character evidence restrictions; other crimes, wrongs or acts), Art. 410 (restrictions on evidence of plea discussions).

. The statements made by Phillips and Veazey were not primarily offered by the state to show the statements were true, but to show Lobato participated in the conspiracy. For example, when Lobato described the robbery of the money to Phillips on the phone, Phillips told him (1) he should have had the money and suitcase in the trunk of the car, not the backseat, (2) he should not tell the police or anyone else of the robbery, and (3) he should not have let people follow him. The truthfulness of these statements is not important. However, the fact that these statements were made by Phillips to Loba-to indicates Phillips and Lobato were aware of and were both involved in a scheme to sell and deliver drugs. Under these circumstances, the extrajudicial statements may be admitted despite their impermissible hearsay aspects, subject to a limiting instruction by the court, unless the danger of their improper use substantially outweighs the need for the evidence for the proper purpose. State v. Jones, 558 So.2d 546, 549 (La.1990), McCormick, Evidence § 249 (3rd ed. 1984).

. The U.S. Fifth Circuit stated the following: Allowing such statement against an already arrested co-conspirator declines to recognize that an arrest operates as a withdrawal as a matter of law.
Ascarrunz, supra, at 763. The court then affirmed the district court’s admission of the statements into evidence, and thus implicitly declined to recognize an arrest as per se withdrawal.