698 So.2d 1057 (1997)
STATE of Louisiana, Appellee,
v.
Wayne LEMON and Raymond Lemon, Appellants.
Nos. 29587-KA, 29588-KA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1997.
*1058 Kidd-Culpepper by Paul Henry Kidd, H. Cameron Murray, Monroe, for Appellant.
Richard Ieyoub, Attorney General, William R. Coenen, District Attorney, Penny Wise-Douciere, Assistant District Attorney, for Appellee.
Before HIGHTOWER, GASKINS and CARAWAY, JJ.
GASKINS, Judge.
The defendants in these consolidated cases, Wayne and Raymond Lemon, each *1059 pled guilty to one count of conspiracy to distribute marijuana, a violation of La. R.S. 14:26 and La. R.S. 40:966(A). Wayne Lemon was sentenced to serve seven years imprisonment at hard labor, while Raymond Lemon was sentenced to serve six years imprisonment at hard labor. The defendants filed a consolidated appeal, collectively urging one assignment of error. For the reasons set forth below, we conditionally affirm the defendants' convictions and sentences. However, we remand for a hearing at which the defendants may present evidence on the issue of conflict of interest.

FACTS
On the morning of July 10, 1995, several deputies from the Richland Parish Sheriff's Office (RPSO) were monitoring Interstate 20 in search of drug traffickers. In furtherance of this goal, the deputies made up a road sign which read "Narcotic Check Point Ahead" in English and Spanish and installed the sign on the shoulder of the interstate approximately one-half mile before the "Holly Ridge" exit. The deputies then parked their vehicles in a parking lot overlooking the Holly Ridge exit ramp and observed the vehicles leaving the interstate at that exit. There was, in actuality, no "narcotic check point"; the sign was evidently intended as a ruse to flush out drug couriers.
At 7:22 a.m., RPSO officers observed a white Cadillac and a green Lexus come down the exit ramp and run through a stop sign. The vehicles turned right onto McManus Road with the Cadillac in front. As the vehicles turned, deputies heard the driver of the Lexus honking the horn as if to signal the Cadillac to stop. The deputies followed the cars.
Approximately one mile south of the interstate, the Lexus pulled into the driveway of a home just off the road. RPSO Deputy Perry Fleming arrived shortly thereafter and pulled in behind the Lexus. Deputy Fleming got out of the car and spoke to an occupant of the home, who was standing in the driveway. This person told the deputy that he did not know the people in the Lexus but said that the passenger had just asked him to tell the officer that they were visitors.
The Lexus was occupied by two females who appeared extremely nervous. The deputy noticed that the vehicle's trunk was partly ajar and became suspicious. Deputy Fleming learned that the Lexus was rented, but neither the driver (Rebecca Chumley) nor the passenger (Sarah Maxwell) could produce the rental agreement. The deputy asked for permission to search the vehicle; at first, permission was refused. However, after the driver and passenger discussed the matter, the driver gave the deputy the keys to the car and indicated that anything found in the car belonged to Raymond Lemon, the driver of the other car.
Another deputy with a narcotics dog had arrived during the discussion. When the dog sniffed around the vehicle, it alerted on the trunk. The deputy raised the partly open trunk and discovered an Army duffle bag containing 46 pounds of marijuana. A pistol was also found inside the bag. Also in the trunk was a receipt bearing the name Raymond Lemon.
Meanwhile, RPSO Deputy Dale Carter pursued and stopped the white Cadillac. There were three persons inside the CadillacRaymond Lemon, the driver; Wayne Lemon, the front seat passenger and Raymond's cousin; and Brenda Jenkins, the rear seat passenger. Deputy Carter gave Raymond Lemon a warning ticket for running the stop sign. As he was doing so, Deputy Fleming called on the radio and asked him to escort the white Cadillac and its occupants back to the home where the Lexus was stopped. Deputy Carter and another deputy traveled ahead and behind of the Cadillac, and all returned to the home.
The occupants of both of the vehicles were arrested. At the police station, Deputy Fleming discovered the rental agreement for the Lexus in Raymond Lemon's pants pocket. Also, a key to the Lexus was found in his possession.
Each person was charged with violating La. R.S. 40:966(A), possession of marijuana with intent to distribute. Theo Coenen, III, represented both of the Lemons and Ms. *1060 Jenkins.[1] Mr. Coenen filed and argued a motion to suppress the marijuana; after a hearing, the motion was denied.
Pursuant to a plea agreement, the charge against the Lemons was reduced to conspiracy to distribute marijuana, and both of the Lemons unconditionally pled guilty. During the court's recitation of the PSI at the sentencing hearing, the judge noted that both Lemons had initially denied knowing the women in the Lexus; the men later admitted this during the plea colloquy. The court also said that these women told police that Raymond and Wayne Lemon had both come to their apartment and recruited them to drive the Lexus from Austin, Texas to Birmingham, Alabama for $500.00.
Wayne Lemon made a statement for the PSI in which he said that "these two girls asked Raymond if they could drive his car to Texas" and indicated his belief that he would be unable to prevail at trial because he was black and the two women in the Lexus were white. At sentencing, he told the judge that he was just "there for the ride" and had merely come to town with his cousin.
Wayne Lemon had a fairly extensive criminal record in Pennsylvania. In that state he has convictions for felony conspiracy and three counts of violating the Pennsylvania Controlled Substance Drug Device and Cosmetic Act, two convictions for illegal carrying of a firearm, one conviction for obliterating firearm identification marks and undisposed charges of aggravated assault, simple assault and reckless endangerment. Wayne Lemon had received probated sentences for his prior convictions, except on the drug-related charges, for which he was sentenced to serve a three to twelve-month sentence of imprisonment. In imposing sentence on the instant conviction, the court stated:
The involvement of Wayne, I do not think was as great as the involvement of Raymond. I'm also taking that into consideration, however, the pre-sentence does indicate that even though Raymond appeared to be mostly in control, Wayne was also with Raymond when the recruitment was made in Alabama to get the two girls to go and to help bring the dope, or to bring the dope back, so I do have to look at that and say no, Wayne was without clean hands, he certainly knew what was going on, so, I do point that out for the record.
Raymond Lemon had no prior felony convictions; he had one misdemeanor Alabama conviction for illegally carrying a concealed weapon.
After the Lemons were sentenced, they discharged Mr. Coenen and retained Paul Kidd. Mr. Kidd filed a document styled as a motion to reconsider sentence. In this motion, along with a complaint that the defendants' sentences were excessive, Mr. Kidd raised for the first time the issue of a possible conflict of interest in the joint representation of the Lemons by Mr. Coenen. The motions asked the court to "reconsider its acceptance of the guilty plea by defendant...." The motions were summarily denied.
The defendants both appealed. Initially, Wayne Lemon asserted five assignments of error, while Raymond Lemon asserted four. However, on this consolidated appeal, they jointly urge only one common assignment of error. The others, being neither briefed nor argued, are deemed abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990).

CONFLICT OF INTEREST
The only remaining assignment of error concerns the fact that the defendants were both represented by the same counsel. In their motions to reconsider sentence, they characterized the issue as the trial court's failure to obtain a waiver of conflict of interest. In their joint brief to this court, they assert the slightly different posture that they were deprived of their Sixth Amendment right to conflict-free counsel because an actual conflict of interest existed. In particular, they argue that counsel's duty to Raymond Lemon prevented him from arguing Wayne Lemon's innocence or lack of culpability. In the same vein, they also contend that counsel's *1061 duty to Wayne Lemon prohibited him from downplaying Raymond Lemon's degree of culpability. We consider the issues, as presented in the motion and the brief, separately.

Pre-Conviction Conflict Claim
The Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Section 13 of the Louisiana Constitution guarantee a criminal defendant the right to the effective assistance of counsel for his defense. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); State v. Carter, 94-2859 (La.11/27/95), 664 So.2d 367. It is settled that requiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not per se violative of constitutional guarantees of effective assistance of counsel. Burger v. Kemp, 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987), citing Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). See also State v. Carmouche, 508 So.2d 792 (La. 1987); State v. Kahey, 436 So.2d 475, 484 (La.1983); State v. Edwards, 430 So.2d 60 (La.1983); State v. Marshall, 414 So.2d 684 (La.1982), cert. denied, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982).
Nevertheless, a single attorney forced to represent codefendants whose interests conflict cannot provide the adequate legal assistance required by the Sixth Amendment. Cuyler v. Sullivan, at 446 U.S. at 345, 100 S.Ct. at 1717.
The time at which a potential conflict of interest is brought to the court's attention governs how the question is treated. State v. Wille, 595 So.2d 1149, 1153 (La.1992), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992); State v. Marshall, supra. In Holloway, supra, the court decided that whenever a potential conflict is raised before or during trial, the trial court has a duty "either to appoint separate counsel or to take adequate steps to ascertain whether the risk (of a conflict of interest) was too remote to warrant separate counsel." 435 U.S. at 484, 98 S.Ct. at 1178. However, although "a possible conflict inheres in almost every instance of multiple representation," Cuyler v. Sullivan at 446 U.S. at 348, 100 S.Ct. at 1718,
[N]othing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of a trial. Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist.
....
Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.
Cuyler v. Sullivan, supra, 446 U.S. at 346-347, 100 S.Ct. at 1717. See also State v. Hughes, 587 So.2d 31, 40-41 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1197 (La. 1992).
A defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Cuyler v. Sullivan, supra, at 446 U.S. 348, 100 S.Ct. 1718.
Congress enacted Federal Rule of Criminal Procedure 44(c) to safeguard against the potential hazards of joint representation.[2] However, no such rule was added to the Louisiana Code of Criminal Procedure until the 1997 Legislative Session. See new La. C.Cr.P. art. 517, effective August 15, 1997, which, according to its comments, is based upon the federal rule and now imposes an independent duty on the trial court to advise *1062 the defendant of his right to conflict-free representation.[3]
All attorneys have the ethical obligation to ensure that their representation of a client does not compromise their loyalty to another client. See Rule 1.7 of the Rules of Professional Conduct of the Louisiana State Bar Association.
Based on the above, before or during trial, the duty of a Louisiana district court to inquire into the possibility of a conflict of interest in a criminal case when that issue was not brought to its attention was limited to cases where, according to Cuyler v. Sullivan, the court knew or reasonably should have known that a particular conflict existed. Our review of the record in the instant case demonstrates nothing which put the trial court on notice that further inquiry was required.
The court was initially presented with two defendants, riding in the same automobile, who were caught traveling with women in the possession of 46 pounds of marijuana. These defendants shared an attorney. There was plainly a connection between Raymond Lemon and the rented Lexus, and the women indicated at some point that Wayne Lemon assisted his cousin in recruiting them to drive the vehicle. Because the defendants were both apparently concerned with the crime to a greater or lesser degree, the issue of their culpability or lack thereof was an issue to be determined at trial. Before trial, the interests of both defendants were the sameto raise a reasonable doubt whether the charges against them were true. Because these defendants were represented by the same attorney but could possibly have different levels of culpability, this situation gives rise to the possibility of a conflict of interest. In the absence of a statutory directive, however, this mere possibility was insufficient to trigger an inquiry because the interests of both clients were not clearly incompatible. Their common defense might well have proved stronger than separate proceedings in which one cousin blamed the other for the crime. Prior to the guilty plea, therefore, in this case there was no duty under Cuyler v. Sullivan for the court to inquire before trial about the conflict of interest which might arise from the joint representation.
For purposes of the trial court's duty to inquire, the most critical points in the Lemons' cases were the guilty plea proceedings. Here in particular, nothing arose to alert the court to the possibility of a conflict from the joint representation. The Boykin colloquies of both of these defendants are notable only for their textbook regularity. Although the factual basis was thinboth defendants simply admitted to traveling with the women in possession of the marijuanathere was absolutely no need for the court to inquire further. In particular, Wayne Lemon said nothing at all during his guilty plea about "being along for the ride," or "visiting his cousin," or being innocent.
Consequently, we find no merit to the defendants' argument as presented in their motions to reconsider.

Actual Conflict of Interest
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so *1063 serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. In the ordinary ineffective assistance case, the defendant must also show that counsel's deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, supra, at 686-88, 104 S.Ct. at 2064. In other words, the defendant must show that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26862 (La.App. 2d Cir. 4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9.
As noted previously, in order to establish a violation of the Sixth Amendment arising from a conflict of interest, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Cuyler v. Sullivan, supra, at 446 U.S. 348, 100 S.Ct. 1718. An actual conflict of interest is established when the defendant proves that his attorney was placed in a situation inherently conducive to divided loyalties. State v. Tart, 93-0772 (La.2/09/96), 672 So.2d 116, 126, cert. denied, ___ U.S. ___, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996).
If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.
Zuck v. Alabama, 588 F.2d 436, 439 (5th Cir.1979), cert. denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979), cited in State v. Kahey, supra, at 484. A conflict affects an attorney's performance when it compromises his choice of defenses and his ability to make free choices. State v. Hughes, supra, 587 So.2d at 41.
The law of conflicts of interest differs from the ordinary law of ineffective assistance of counsel in one important respect. If a defendant can show that his attorney had an actual conflict of interest, the defendant in a conflict claim is entitled to a limited presumption of prejudice. Strickland v. Washington, supra, 466 U.S. at 692, 104 S.Ct. at 2067, citing Cuyler v. Sullivan, supra. However, prejudice to the defendant is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." Strickland, id. The Kahey court described the inquiry thus:
When there is such a conflict of interest, the prejudice may be subtle, even unconscious. It may elude detection on review. A reviewing court deals with a cold record, capable, perhaps, of exposing gross instances of incompetence but often giving no clue to the erosion of zeal which may ensue from divided loyalty. Accordingly, where the conflict is real, a denial of effective representation exists without a showing of specific prejudice. Castillo v. Estelle, 504 F.2d 1243, 1245 (5th Cir.1974). See also Zuck v. Alabama, supra, 588 F.2d at 436. A reviewing court cannot, however, presume that joint representation and the possibility of a conflict has resulted in ineffective assistance of counsel. Multiple representation may even be desirable for a particular defendant as a means of insuring against reciprocal recrimination in cases "where a common defense gives strength against a common attack." Glasser v. United States, 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680 (1942), Frankfurter, J., dissenting.
Kahey, 436 So.2d at 485.
Although the court has said that "unconstitutional multiple representation is never harmless error" (Cuyler v. Sullivan at 446 U.S. at 349, 100 S.Ct. at 1719), the U.S. Supreme Court has indicated by application that the "limited" presumption of prejudice is rebuttable. See, e.g., Burger v. Kemp, supra, at 483 U.S. 785, 107 S.Ct. 3121, wherein the court noted that, under the facts of that case,
We also conclude that the asserted actual conflict of interest, even if it had been established, did not harm [defendant's] lawyer's advocacy.
*1064 Appellate review of ineffective assistance claims is best made where the record contains some evidence pertaining to the claim taken in district court. Such claims are generally relegated to application for post-conviction relief in the trial court where a full evidentiary hearing may be conducted. In the present matter, however, the interest of justice and judicial economy will likely be served by resolving the issue at this juncture. Therefore, we remand the cases to the trial court for a full evidentiary hearing at which defendants will have separate representation on the issue.
See State v. Lobato, 588 So.2d 1378 (La.App. 2d Cir.1991), conditionally affirmed and remanded, 603 So.2d 739 (La.1992), appeal after remand, 621 So.2d 103 (La.App. 2d Cir.1993), writ granted in part and denied in part, 627 So.2d 644 (La.1993). Although Lobato was convicted after a jury trial, we find that the issues presented on ineffective assistance are sufficiently similar to the instant cases which involved guilty pleas. In the Lobato case, the Louisiana Supreme Court remanded the matter to the trial court for an evidentiary hearing on the conflict of interest issue twice; the second time, the trial court was directed to address the question of whether counsel's representation of both Lobato and his co-defendant caused him to refrain from negotiating a favorable plea bargain which might have entailed testifying against the co-defendant. Such an inquiry into the existence of an actual conflict and its possible effect on the performance of the defendant's attorney would be equally pertinent in the cases before us now.

CONCLUSION
The convictions and sentences of the defendants are conditionally affirmed. However, we remand the matter to the trial court for an evidentiary hearing on the issue of ineffectiveness of counsel due to conflict of interest. In the event that the trial court finds merit to the claims, the trial court should set aside the convictions and direct that the matter proceed to trial. If the trial court determines that the claims are meritless, the defendants' rights to appeal from that ruling are reserved.
CONDITIONALLY AFFIRMED AND REMANDED.
NOTES
[1] Charges against Brenda Jenkins were dismissed.
[2] The rule provides, in pertinent part:

[T]he court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.
[3] La.C.Cr.P. Art. 517 provides:

A. Whenever two or more defendants have been jointly charged in a single indictment or have moved to consolidate their indictments for a joint trial, and are represented by the same retained or appointed counsel or by retained or appointed counsel who are associated in the practice of law, the court shall inquire with respect to such joint representation and shall advise each defendant on the record of his right to separate representation.
B. Unless it appears that there is good cause to believe that no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.